IN THE UNITED STATES DISTRICT FOR THE
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JASON LEE VAN DYKE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 1:20-MC-657-LY |
| | § | |
| THOMAS CHRISTOPHER RETZLAFF, a/k/a DEAN ANDERSON, d/b/a BV FILES, VIA FILES, L.L.C., and VIAVIEW FILES, | § § § § § § | |
| | § | |
| Defendant. | § | |

### UNITED STATES' AMENDED[1] MOTION TO QUASH SUBPOENA OF FBI WITNESS JAMES MCGIBNEY AND MOTION TO TRANSFER

Nonparty United States moves to quash a subpoena for documents and deposition testimony of James McGibney in a civil defamation case pending before Judge Mazzant in the Eastern District of Texas (the Subpoena) and to transfer the motions to quash to that court. *See* Dkt. 1; *Van Dyke v. Retzlaff*, Case No. 4:18-CV-247ALM, ECF No. 182 (E.D. Tex. June 18, 2020) (EDTX Case). McGibney is participating as a witness with the Federal Bureau of Investigation in an ongoing criminal investigation of Thomas Retzlaff, the defendant in the civil suit. Retzlaff now attempts to use this defamation case to subpoena information related to his own criminal investigation—information that is protected by the criminal investigation privilege and entirely irrelevant to the defamation suit.

Both parties in the defamation suit have pursued information about criminal investigations by filing "notices" of subpoenas on ECF in the EDTX Case. *See, e.g., id.* at ECF Nos. 178, 182. While the defendant, Retzlaff filed the Subpoena to McGibney at issue here, the plaintiff, Jason Van Dyke, filed a subpoena directed to Paul Johnson, the district attorney of

---

[1] This Amended Motion corrects and amends the original, Dkt. 3, and provides for service of a pro se party to McGibney's Motion to Quash, Dkt. 1.

Denton County. Johnson filed a motion to quash his subpoena on the grounds of the law enforcement privilege, and Judge Mazzant granted the motion. *Id.* at ECF Nos. 174, 180. Similarly, here, the United States moves for an order quashing the Subpoena as to McGibney and instructing McGibney not to disclose information protected by the law enforcement privilege. The United States' motion is supported by the Declaration of FBI Special Agent Walker Wicevich, attached hereto as Exhibit 1.

Because the notice indicates that McGibney's deposition is to take place in Austin, Texas on June 23, 2020, the United States moves to quash the subpoena in this forum as required by Federal Rule of Civil Procedure 45.[2] McGibney has filed his own Motion to Quash in this forum, Dkt. 1, and plaintiff Van Dyke has filed a brief in support, Dkt. 2. These motions are now ripe for transfer. According to Federal Rule of Civil Procedure 45(f), the Court may transfer a motion to quash where the subject of the motion consents, or where the court finds exceptional circumstances. Here, there are both. The United States has conferred with Mr. McGibney, who would prefer that the motion be adjudicated in EDTX. And the Court may determine that the complexity and history of this matter, as set forth below, presents exceptional circumstances such that transfer to Judge Mazzant in EDTX where the underlying case is pending is appropriate.

## BACKGROUND

The underlying lawsuit is part of an ongoing personal feud between Van Dyke and Retzlaff. Van Dyke's claims revolve around allegedly harassing, false, and defamatory statements and publications allegedly made by Retzlaff about Van Dyke. *Van Dyke v. Retzlaff*, Case No. 4:18-CV-247-ALM, ECF No. 113 (E.D. Tex. June 18, 2020).

Van Dyke alleges that on or around December 20, 2017, Retzlaff filed a frivolous grievance against him with the State Bar of Texas. *Id.* Van Dyke states that on or around March 8, 2018, the website "BV Files" located on www.viaviewfiles.net (BV Files) publicly posted

---

[2] While the notice lists June 23, 2020 (the date of the instant filing) for the deposition, the United States has conferred with counsel for Retzlaff and understands that no logistics have been arranged for the deposition to take place today.

confidential information. *Id.* Van Dyke alleges Retzlaff received this information in a letter from the Board of Disciplinary Appeals (BODA) regarding Van Dyke's bar grievance. *Id.* Van Dyke also alleges that Retzlaff posted content on BV Files accusing Van Dyke of being a Nazi, white supremacist, pedophile, drug addict, having a criminal record involving abusing women, and that he was involved in revenge pornography and unwanted sexual solicitations. *Id*. Van Dyke alleges Retzlaff emailed his employers at Karlseng, Leblanc & Rich, LLC, claiming Van Dyke was a Nazi, a white supremacist, and that he had a criminal record involving abuse of women. Van Dyke alleges his employer subsequently terminated his position because of Retzlaff's emails. *Id.* Van Dyke alleges that Retzlaff and BV Files frequently target attorneys and other individuals who have previously assisted victims of revenge pornography, including the target of this subpoena, James McGibney. *Id.* Retzlaff, in turn, denies the claims and alleges Van Dyke plotted to assassinate him. *Id.* at ECF No. 139. Neither Van Dyke's claims nor Retzlaff's defenses allege that James McGibney is involved in any way in the civil suit.[3]

The FBI has an independent ongoing criminal investigation against Retzlaff involving allegations of computer-related crimes, including cyberstalking and online harassment. Ex. 1, Wicevich Decl. ¶ 2. McGibney is a cooperating FBI witness in the ongoing criminal investigation. *Id.* ¶ 3. The communications, information and materials exchanged between McGibney and the FBI, requested by this subpoena, relate to criminal investigations against Retzlaff and others. *Id.* ¶ 4. The FBI's ongoing investigation of Retzlaff includes communication, information and materials exchanged between McGibney and various state law enforcement agencies. *Id.* The communications and materials exchanged between McGibney and the FBI include a host of nonpublic information about the FBI's activities related to Retzlaff and other individuals. *Id.* ¶ 5. The FBI indicates that disclosure would jeopardize FBI investigations into Retzlaff and others, and assist in evasion, by providing insight into law enforcement activities; how the investigations are being conducted and by whom; what information the FBI has in relation to the investigations; the techniques being used to gather the

---

[3] Retzlaff and McGibney were involved in a separate, unrelated civil lawsuit in Tarrant County, Texas. *See McGibney v. Thomas Retzlaff*, Cause No. 067-270669-14.

information; the identities and personal information concerning sources, witnesses, victims, and law enforcement agents; and more. *Id.* ¶ 5. And disclosure would subject the individuals identified in the materials to potential harassment and reprisal, and hinder the FBI's investigations. *Id.* ¶ 6.

On June 12, 2018, the FBI executed a search warrant at Retzlaff's residence in El Mirage, Arizona. *Id.* ¶ 7. While executing the search warrant, the FBI seized numerous pieces of evidence including a computer. Retzlaff was present while the FBI searched his residence. During execution of the search warrant, Retzlaff asked an FBI agent if McGibney was behind the search warrant. The agent did not share any details of the investigation with Defendant. *Id.* ¶ 9.

On June 18, 2020, in connection with the unrelated civil defamation action, Retzlaff filed this Subpoena on ECF. *See Van Dyke v. Retzlaff*, ECF No. 182. The Subpoena commands McGibney to produce records and attend a deposition on June 23, 2020. The Subpoena encompasses law enforcement investigations of Retzlaff; investigative methods and techniques, the identities and PII of nonparty victims, witnesses and law enforcement officials, and law enforcement activities:

> All communication, emails and material exchanged between Mr. McGibney and all law enforcement, including the F.B.I and Special Agent Walker Wicevich. *See* (Dkt. 182-1, ¶¶ 11, 12, & 13).
>
> All communication, emails and material exchanged between Mr. McGibney and the F.B.I concerning Mr. Van Dyke. *See* (Dkt. 182-1, ¶¶ 12 & 13).
>
> All communication, emails and material exchanged between Mr. McGibney and the F.B.I showing how Defendant was associated with the BV Files blog. *See* Dkt. (182-1, ¶¶ 2, 3, 12 & 13).
>
> All documents pertaining to any technical, scientific, or investigative methods used to determine Defendant is associated with the "BV Files" blog located at www.ViaViewFiles.net. *See* (Dkt. 182-1, ¶ 4).
>
> All communication, emails and material reflecting any surveillance activities performed or supported by Mr. McGibney on Defendant or any of his family members. *See* (Dkt. 182-1, ¶ 15).

>All communication, emails and material exchanged between Mr. McGibney and Philip Klein, Brittany Retzlaff, and Collin Retzlaff. *See* (Dkt. 182-1, ¶¶ 8-10).
>
>All communication, emails and material exchanged between Mr. McGibney and all law enforcement. *See* (Dkt. 182-1, ¶ 13).

The Subpoena was filed three business days before the discovery deadline in the EDTX Case and allowed only three business days for compliance.

### STANDARDS

Under 28 U.S.C. § 517, "The Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States." The government files this motion to protect its substantial interests implicated by the Subpoena.

"On timely motion, the court for the district where compliance is required must quash or modify a subpoena that … requires disclosure of privileged or other protected matter, if no exception or waiver applies," Fed. R. Civ. P. 45(d)(3)(A)(iii); *Whole Woman's Health v. Smith,* 896 F.3d 362, 374 (5th Cir. 2018), *as revised* (July 17, 2018), *cert. denied sub nom. Whole Woman's Health v. Texas Catholic Conference of Bishops,* 139 S. Ct. 1170, 203 L. Ed. 2d 198 (2019) (citing *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 817–18 (5th Cir. 2004)). In addition, subpoenas are subject to the relevance and proportionality standards set forth in Fed. R. Civ. P. 26. *See, e.g., MetroPCS v. Thomas*, No. 3:18-MC-29-K-BN, 2018 WL 2933673, at *9 (N.D. Tex. June 12, 2018); *Whitley v. Pinnacle Entm't, Inc.*, No. CV 15-595-BAJ-RLB, 2016 WL 6154938, at *2 (M.D. La. Oct. 21, 2016). *Rodriguez v. Bryan Truck Line, Inc.*, SA-17-CV1103-XR, 2018 WL 7348032, at *2 (W.D. Tex. Sept. 18, 2018).

Discovery is limited to non-privileged matters that are both relevant to the claims or defenses and, additionally, proportional to the needs of the case, taking into account, *inter alia,* the importance of the discovery in resolving the issues and whether the burden of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). And the Government's discovery obligations in a criminal case are limited to those required under Fed.R.Crim.P 16, 18 U.S.C.

§3500 (Jencks Act). *See, e.g., Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972). There is no general constitutional right to discovery in a criminal case, and Brady did not create one. *Whetherford v. Bursey*, 429 U.S. 545, 559 (1977).

Where good cause exists, a court may enter an order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c)(l). The Court may, *inter alia,* forbid the discovery, limit the scope of discovery, and/or require the discovery to be taken in a different manner than that chosen by the party seeking discovery. *See* Fed.R.Civ.P. 26(c)(l)(A-H); *see also Robinson v. City of Philadelphia*, 233 F.R.D. 169, 171 (E.D. Pa. 2005) (denying deposition of plaintiff regarding her conversations with the FBI); *Cofield v. City of LaGrange, Ga*., 913 F. Supp. 608, 611-618 (D.D.C. 1996) (denying access to sensitive governmental information).

### POINTS & AUTHORITIES

**1. The Subpoena should be quashed.**

The Subpoena should be quashed for three reasons:

*First*, the information subject to the Subpoena is nonpublic protected law enforcement information, the disclosure of which would cause substantial harm. The federal common-law law-enforcement privilege is derived from *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). In *Roviaro*, the Supreme Court first recognized a qualified privilege allowing the government to withhold the identities of confidential informants. *Id.* at 59. Since Roviaro, the Fifth Circuit has concluded that the law-enforcement privilege protects more than just the identities of confidential informants and extends to ongoing criminal investigations. *See, e.g., In re Eisenberg*, 654 F.2d 1107, 1111 n. 5 (5th Cir. 1981). The privilege protects, for example, "(1) information pertaining to "law enforcement techniques and procedures," ... (2) information that would undermine "the confidentiality of sources," ... (3) information that would endanger "witness and law enforcement personnel," ... (4) information that would undermine "the privacy of individuals involved in an investigation," ... or (5) information that would seriously impair "the ability of a law enforcement agency to conduct future investigations[.]" *In re the City of New York*, 607 F.3d 923, 948 (2d Cir.2010) (internal citations omitted). *See also F.T.C. v.*

*Timeshare Mega Media & Mktg. Grp., Inc.,* No. 10-62000-CIV, 2011 WL 6102676, at *4 (S.D. Fla. Dec. 7, 2011) (granting FBI's nonparty motion to quash testimony of FBI agent in a civil enforcement action).

As a result, the Fifth Circuit prohibits the disclosure of information relating to pending law enforcement investigations in civil matters as this one. *In re United States Dep't of Homeland Sec.,* 459 F.3d 565, 570 (5th Cir. 2006). And the Fifth Circuit has further held that a subpoena cannot be used as a fishing expedition to obtain information that is not otherwise discoverable to a defendant in a criminal case. *United States v. Arditti*, 955 F.2d 331, 345 (5th Cir.), cert denied, 506 U.S. 998 (1992).

Here, the Subpoena seeks materials and information that fall squarely within the privilege. These materials were generated in connection with FBI investigations of Retzlaff and others. They offer a picture of information received by the FBI in connection with investigations; steps taken in the investigations; how the investigations are being conducted and by whom; what information the FBI has in relation to the investigations; the techniques being used to gather the information; and the identities and personal information of sources, witnesses, victims, and law enforcement agents. Disclosure would provide the target of an FBI investigation unprecedented insight, would jeopardize the FBI's activities, and would subject individuals to potential harassment and reprisal. The harm in disclosure is substantial, and the motion should be quashed for this reason alone.

*Second*, and in any event, the information subject to the Subpoena is not relevant to the matters in issue in the EDTX Case. The defamation action has nothing to do with McGibney or the FBI, McGibney's work as a witness with the FBI, or any law enforcement investigations of Retzlaff or others. None of the requested information in the Subpoena bears on the claims or defenses in that action. Instead, the subpoena seeks information concerning the FBI's criminal investigation of Retzlaff, the FBI's execution of a search warrant upon Retzlaff, what Retzlaff believes is McGibney's role in that investigation and search warrant, McGibney's role in other criminal and civil matters, and identities and related information of victims, witnesses and law enforcement agents. The Subpoena is directed to apparent personal matters between Defendant

Retzlaff and McGibney unconnected to the factual and legal issues in this action, and to obtaining protected information about the FBI's activities and ongoing investigation of Defendant Retzlaff and others. The Subpoena should be quashed for this second reason as well.

*Last*, the timing of the Subpoena is highly prejudicial. The Subpoena allowed three business days for compliance. Rule 45 provides that the district court shall quash or modify a subpoena where, as here, the subpoena does not allow a reasonable time to comply. Fed. R. Civ. P. 45(d)(3)(A)(i); *Hamilton v. Ochsner Health Sys., Inc.*, CIV.A. 12-1398, 2012 WL 6725609, at *3 (E.D. La. Dec. 27, 2012). "[S]erving a subpoena for a deposition five calendar days before … the commanded deposition fails to allow a reasonable time to comply." *Traut v. Quantum Servicing, LLC,* 3:18-MC-14-D-BN, 2018 WL 1035134, at *9 (N.D. Tex. Feb. 23, 2018.). Here, Retzlaff filed the subpoena three business days before the commanded deposition on the last day set for discovery in the EDTX Case. The Subpoena should be quashed for this third and independent reason.

**2. The Motions to Quash the Subpoena should be transferred to EDTX.**

The related motions to quash filed by McGibney, Dkt. 1, and by the United States should be transferred to EDTX. Federal Rule of Civil Procedure 45(f) provides that the Court may transfer a motion to quash where the subject of the motion consents, or where the court finds exceptional circumstances. This case presents both. McGibney has indicated his consent to transfer to EDTX. And there are exceptional circumstances, as Judge Mazzant has already adjudicated a similar motion brought by the district attorney in the underlying action. Given the facts described above, the history of the underlying case and criminal investigation, and Retzlaff's inappropriate use of the judicial process, the Court may determine that this case presents exceptional circumstances such that transfer is appropriate.

**CONCLUSION**

For all the foregoing reasons, the United States asks that the Court quash the Subpoena and transfer this Motion, as well as McGibney's Motion to Quash, Dkt. 1, to the Eastern District of Texas.

Respectfully submitted,

John F. Bash
United States Attorney

By:     */s/ Kristina S. Baehr*
Kristina S. Baehr
Assistant United States Attorney
Bar No. _ 24080780 _____
903 San Jacinto, Suite 334
Austin, Texas  78701
(512) 916-5858 (phone)
(512) 916-5854 (fax)
Kristina.baehr@usdoj.gov

**CERTIFICATE OF CONFERENCE**

I hereby certify that on June 22, 2020, Assistant Aimee Cooper conferred with Defendant's counsel, Jeffrey Dorrell who opposes the motion, at least in part. Counsel for the Defendant represented that he did not concur with the motion but, that he would "stipulate that we are not seeking documents relating to McGibney's acting as a witness in matters unrelated to Retzlaff. But McGibney's history of making false statements and using FBI complaints to retaliate against his hatred enemy Retzlaff are relevant to McGibney's as a witness against Retzlaff."  Assistant Kristina Baehr also conferred with Mr. McGibney on June 23, and he indicated that he both consents to transfer and supports the motion to quash.

By: */s/ Kristina S. Baehr*
Kristina S. Baehr
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I certify that on this 23rd day of June, 2020, a true copy of this motion with attachments was served on all counsel of record by way of the Court's CM/ECF system and that service was made by certified mail to the pro se litigant:

James McGibney
4305 Ridgebend Dr.
Round Rock, TX 78665

By: */s/ Kristina S. Baehr*
Kristina S. Baehr
Assistant United States Attorney